Buying, receiving, concealing or aiding in concealing stolen property; thirteen months.
After being tried and convicted on December 12, 1975, appellant applied for probation and the case was continued for a hearing. At the hearing the probation request was denied and the appellant filed this appeal.
The facts surrounding this conviction are, that on November 21, 1974, Emory Lee Head drove his 1974 Ford Maverick to Courtesy Ford in Montgomery for maintenance. *Page 898 
It was 8:15 or 8:30 A.M. when he left the car and on his return the same day, it was not there. The car was a two-toned brown with a vinyl top, four-door Ford Maverick and valued at approximately $4,000. It carried a 1975 Montgomery tag bearing the number, 10293. On that afternoon Head returned to Courtesy Ford and was informed his car was not there. He asked that the service manager call the police and report the car stolen. It was not until December 6, 1974 that Detective Kenneth A. Hitson returned his car.
Kenneth A. Hitson, a detective for the Montgomery Police Department saw the brown Ford Maverick on the morning of December 6, 1974, and recalled that it was a "wanted vehicle." At the time Hitson saw the vehicle, he and his partner were parked near Fleming Road next to Herman Robinson's Used Car Lot, in Montgomery. When the Maverick passed, he pulled in behind it and noticed that another vehicle was following. After receiving information, in response to their radio inquiry, that the vehicle was stolen, they stopped the car. According to Hitson, appellant was driving the car and no one was with him. Hitson's partner got out and walked to the stolen vehicle. About the same time the vehicle that had been following the Maverick went on to the end of the road and started picking up speed as it returned. When Hitson picked up his weapon, the other car stopped and an individual whom Hitson recognized as Arnold McArthur Jones got out. Jones was taken over to the car and Hitson informed him and appellant that they were in possession of a stolen vehicle.
Afterwards appellant was taken to the police station where he was advised of his rights before a statement was taken. Hitson recalled that a rights form and the statement were read to the appellant and explained that although appellant could not read, he indicated he understood. Hitson said that the statement was signed by appellant and that he witnessed his signature.
During the trial, the statement was introduced and read to the jury over appellant's objections. In that statement the appellant admitted having the Maverick in his possession, and stated that three weeks before, he had bought the car from a man at Courtesy Ford. Appellant stated that he had given him eight-hundred dollars cash and was to meet the man at the Varsity Pool Room and receive a bill of sale. According to appellant, that was the last time he saw the man and he had looked for him on two other occasions. In the statement, the appellant said he could not remember the man's name but it was Ronald something. Further, in answer to the question: "Didn't you think the car was hot for that price?" he responded: "I figured it was." Appellant explained in the statement that he parked the car near the Holiday Inn in Prattville because he did not have a bill of sale for it and ". . . did not want to drive around too much." Appellant also stated that he did not intend to sell the car but intended to keep it.
The State completed its case at the end of Hitson's testimony. A motion to exclude the State's evidence was made by the appellant on the grounds that the State had not proved that the car was stolen. Counsel argued there was no proof that the appellant intended to steal the car or that the offense had been committed in Montgomery County.
The motion was overruled and the appellant rested his case without presenting any evidence.
 I
The appellant contends the State failed to prove that the 1974 Maverick the appellant was charged with buying, receiving and concealing, was stolen.
To establish the offense of buying receiving and concealing stolen property, it must appear that the property listed in the indictment had disappeared, from where the owner left it, without his knowledge or consent. This along with other evidence that the owner reported its disappearance to the police was sufficient for the jury to infer that the property had been stolen. Johnson v. State, 41 Ala. App. 351, *Page 899 132 So.2d 485; Franklin v. State, 47 Ala. App. 62, 249 So.2d 882.
In the present case, the testimony was that Head took his car to Courtesy Ford in Montgomery for minor repairs and when he returned the car was not there. The police were alerted and about sixteen days later his car was returned to him by an officer of the Montgomery Police Department.
Under these facts and circumstances we believe the evidence was sufficient for the jury to conclude that the appellant had possession of the stolen vehicle. The sufficiency of any explanation that the appellant made for having possession of the vehicle was a question for the jury. Ellis v. State, 43 Ala. App. 157, 182 So.2d 910.
 II
Counsel for appellant maintains that the admission of any confession without independent proof of the corpus delicti was erroneous.
The prevailing rule is that the corpus delicti may be shown by facts and circumstances from which the jury might legally infer that the offense has been committed. Direct evidence is not required. McKee v. State, 24 Ala. App. 175, 132 So. 68.
It is undisputed that Head was the owner of the vehicle in question and that it disappeared without his knowledge or consent. Later it was seen in the possession of the appellant and after his arrest the car was returned to the owner.
Under the rule announced in McKee v. State, supra, we believe the facts outlined above were sufficient to establish the corpus delicti and permit the introduction of the statement.
 III
Appellant's complaint that the State failed to prove venue is unsupported by the record. In our examination of the testimony of Head, we found that on being asked where Courtesy Ford was located he responded that it was in Montgomery County, Alabama. In view of this evidence adduced by the State, we believe the jurisdictional requisite of venue was met.
 IV
Appellant insists that the court was in error when in its instructions to the jury concerning the elements of buying, receiving, and concealing stolen property, the judge stated:
. . . . .
 "Such reasonable grounds being knowledge of circumstances by the Defendant which circumstances were such that any reasonable man of ordinary observation would have known it was stolen. (3) That the Defendant so bought, received, or concealed, or aided in concealing with such knowledge or with such reasonable grounds for believing that such goods were stolen, and not having the intent to restore such goods to the owner."
Counsel argues that these instructions were erroneous because the defendant was not a man of ordinary observation and the instruction was not a correct statement of the law under T. 14, § 338, Code of Alabama 1940, Recompiled 1958. Counsel maintains that § 338 of T. 14, provides for an ordinary "reasonable man" test but contends appellant's inability to read showed he had a limited intellect and should not be considered a "reasonable man."
The fact that a person cannot read would not in and of itself, prevent a person from being a man of reason and having the ordinary power of observation. Whether this appellant's intellect was so impaired by his inability to read that he could not be considered a reasonable man, was a question addressed to the trier of the fact. This was a matter that the jury could take into consideration during its deliberations.
Although the indictment omitted any allegation that appellant had reasonable grounds for believing that items were stolen, both the Supreme Court and the Court of Criminal Appeals of Alabama, have held that the code form indictment used here was broad enough to cover the *Page 900 
charge outlined in T. 14, § 338, supra. Franklin v. State, supra.
 V
It is insisted that it was improper for any judge other than the judge presiding at the trial to rule on appellant's probation. Counsel argues that the trial judge has the benefit of certain knowledge acquired because he presided over the trial, which another judge would not have.
The granting of probation is a matter of grace and entirely within the discretion of the trial court. Sparks v. State,40 Ala. App. 551, 119 So.2d 596.
The power to suspend execution of sentence and place a person on probation after a conviction of crime has been vested in the circuit courts and courts of record. T. 42, § 19, Code of Alabama 1940, Recompiled 1958. The authority and jurisdiction bestowed by this statute empower those specified courts to act in matters of probation. It does not designate any particular judge, although it can be argued that the better practice would be for the judge who tried the case to act on matters of probation. We do not believe it is improper for another judge of the same court to adjudicate the matter, especially in view of the ever increasing case load in our courts.
 VI
Finally, the appellant complains that the legislature did not have the power to brand as criminal, the act of concealing property which in fact has not been stolen. Appellant maintains the statute makes no requirement that the property be stolen if there is reasonable cause to believe the property is stolen when in fact it was not.
In Farzley v. State, 231 Ala. 60, 163 So. 394, the Alabama Supreme Court in speaking on this point, stated:
 "The statute in our opinion is plainly expressed, and means that if `reasonable grounds for believing' exist, that element is established, although defendant may have had no `knowledge', and that `reasonable grounds for believing' are not inserted in the statute as a means of proving knowledge, but that it is a substitute for knowledge, in the alternative. Under the statute now, if the jury believes beyond a reasonable doubt the existence of facts which were known to the defendant and which are sufficient in the opinion of the jury to show the existence of `reasonable grounds for believing' that the goods were stolen, and they were in fact stolen, no further inquiry in that respect need be pursued."
We believe what the court was saying in substance was that a conviction resting on an inference is authorized if the defendant had reasonable grounds for believing that the goods had been stolen. However, if as a matter of fact they had not been stolen, there could be no conviction, no matter how strong the evidence tending to show that a defendant had reasonable grounds for believing they were stolen.
We do not believe, due to the foregoing that the appellant's contention was well taken.
No error appears in the record.
AFFIRMED.
TYSON, HARRIS and BOOKOUT, JJ., concur.
CATES, P.J., dissents.